UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ANN MIKOLOWSKI,

                                                                                                    File No.

     Plaintiff,

                                                                                                       Hon.

v.

91ST DISTRICT COURT and
JUDGE ERIC G. BLUBAUGH,
in his official and individual capacities,

     Defendants.

_____/

# COMPLAINT AND JURY DEMAND

## COMPLAINT

Plaintiff, Ann Mikolowski, by her attorneys, Pinsky, Smith, Fayette & Kennedy, LLP, represents:

### Jurisdiction, Venue and Parties

This is an action requesting the Court to remedy violations of Plaintiff's right to Freedom of Speech under the First Amendment of the Constitution, pursuant to 42 U.S.C. 1983, and factually-related violations of Michigan's Whistleblower's Protection Act ("WPA"), Mich. Comp. Laws Ann. § 15.361, *et seq.*

1

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

2. Plaintiff resides in Chippewa County, Michigan, in the Western District of Michigan, Northern Division.

3. Defendant 91st District Court (also referred to as "District Court") is a court located in Chippewa County, Michigan; a state actor; and an employer under the laws of the State of Michigan. The 91st District Court does business in the Western District of Michigan, Northern Division. Defendant, the Honorable Eric G. Blubaugh, is a judge of the 91st District Court and resides in Chippewa County, Michigan, in the Western District of Michigan, Northern Division.

4. Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

## Factual Allegations

5. Plaintiff worked for Defendant 91st District Court for 22 years. She first worked as a deputy clerk, and in 2004, she became the Court Administrator for the District Court. She continued as the Court Administrator until her termination on May 16, 2017.

6. Until December 2015, Plaintiff reported directly to then-sole District Court Judge, the Honorable Elizabeth Church.

7. The Honorable James Lambros is the sole Circuit Court Judge for the 50th Judicial Circuit Court in Chippewa County. Judge Lambros was the Chief Circuit Court Judge at all times relevant to this complaint.

8.  In Chippewa County, there is only one Probate/District Court Judge, one Circuit Court Judge, and one Magistrate. All Probate/District Court and Circuit Court judges and staff work in two buildings next door to each other.

9.  Tina Ojala is the Circuit Court Administrator. At no time did Plaintiff report to Ms. Ojala.

10.  On May 25, 2016, the Supreme Court of Michigan reviewed a decision and recommendation by Judicial Tenure Commission ("JTC") regarding Judge Church. The Supreme Court issued an Order requiring Judge Church be publicly censured and suspended without pay for 120 days. See *In re Church*, 879 N.W.2d 246, 249-50 (Mich. 2016).

11.  The discipline recommended by the JTC and ordered by the Court was based on "several years" of misconduct by Judge Church, which included reducing charges, dismissing charges, and modifying sentences in at least 20 criminal cases, without holding a hearing and without authority from the prosecutor, and engaging in *ex parte* discussions considering substantive matters. *In re Church*, 879 N.W.2d at 246-49.

12.  During the time period in which Judge Church's misconduct occurred, Plaintiff reported to Judge Church as the Court Administrator.

13.  Upon information and belief, Judge Lambros was aware of Judge Church's misconduct, but did not report it to the JTC or the State Court

Administrative Office ("SCAO") or otherwise take action to correct Judge Church's behavior.

14. In May 2014, Plaintiff reported Judge Church's troubling behavior to Jerry Kole, an employee of the State Court Administrative Office ("SCAO").

15. Mr. Kole called the JTC and made a referral regarding potential judicial misconduct based on Plaintiff's report.

16. The JTC began its investigation of Judge Church in June 2014, and proceeded to interview Court and judicial staff in Chippewa County.

17. During this time, Defendant Judge Blubaugh was the Chippewa County Magistrate Judge.

18. It was common knowledge among the staff and the judges in the Chippewa County District and Circuit Courts that Plaintiff was the person who reported Judge Church's misconduct.

19. In December 2015, Judge Church began a medical leave and never returned to the bench or performed additional work as a judge.   Upon information and belief, Judge Church ultimately learned she was suffering from a brain tumor.

20. From the time Judge Church left the bench in December 2015 until May 16, 2017, there was no sitting Probate/District Court Judge. Upon information and belief, Judge Church was paid until May 6, 2017, with the exception of her 120-day suspension.

21. While there was no Probate/District Court Judge, Plaintiff had no official supervisor. She helped coordinate guest judges and circulated the docket to cover cases in Judge Church's absence.

22. On April 3, 2017, Chippewa County Sheriff Mike Bitnar sent an email to several individuals, including Plaintiff, regarding an "UPDATE on our courtroom security project." The message was sent to multiple court and county employees, including Defendant Judge Blubaugh (then Magistrate Blubaugh).

23. Designing and making decisions regarding court security is the responsibility of the Chippewa County Administrator and the Sheriff. Plaintiff's job did not include any authority regarding designing or making decisions related to court security.

24. Sheriff Bitnar's email discussed the security plans he, with consultation from the county judges, had designed for each of the three courtrooms.

25. For the Circuit Court, Sheriff Bitnar's email stated,

> There will be a walk-through metal detector outside the entrance door to the courtroom along with a table. There will also be a barrier that will be pulled across whenever court is in session CLOSING the courtroom while the Judge is on the bench. This was discussed with both the Circuit Court and Probate court Officials during the planning stage (as we had NO full time Dist court judge at the time).
>
> The Bailiff will wait for the Judge to get into the chambers before opening the courtroom and screening people in.

26. Regarding the District Court, Sheriff Bitnar's email stated, in part,

> … Just like the Circuit court there will be a people barrier that will close off the courtroom while the Judge is on the bench.
>
> The courtroom will reopen whenever the Judge is safely back in chambers and the Bailiff can process people in.

27. Regarding the Probate/Family Division courtroom, Sheriff Bitnar's email stated, in part, "A BIG CLOSED sign will be placed on the door whenever court is in session and people can wait outside until the next recess."

28. Sheriff Bitnar's email regarding the new court security plan also stated,

> I am hoping to get the message to all the Attorneys so they will be EARLY and meet with their clients prior to the court date as they will NOT be allowed to leave the secured court area to talk with their clients (if they are in custody of our Office).

29. On April 4, 2017, Plaintiff spoke with Sheriff Bitnar about the security plan and expressed her concern that she did not think it was legal to have the courtrooms closed to the public during court proceedings.

30. Sheriff Bitner told Plaintiff that the plan was a "done deal." He stated that the county had already purchased the metal detectors for the courtrooms, and the county did not want to pay for separate deputies to monitor and admit people to the court through the metal detectors during court proceedings. He did not engage in further conversation with Plaintiff regarding her concerns, as she had no authority over or responsibility regarding courtroom security plans.

31. Following this meeting, on April 4, 2017, Plaintiff called Mr. Kole at SCAO and explained she was concerned about the legality of the plan to shut down the courtroom.

32. Mr. Kole told Plaintiff that the security plan violated MCR 8.116. He told Plaintiff he would speak to the Chippewa County judges.

33. Mr. Kole spoke with Ms. Ojala, Circuit Court Administrator, to inform her that the security plan violated MCR 8.116 and could not be implemented.

34. Subsequently, Dennis MacDonell, a court security expert with SCAO, spoke with Sheriff Bitnar regarding the proposed security plan. After speaking with Sheriff Bitnar, Mr. MacDonell spoke with Mr. Kole about the proposed security plan.

35. On February 23, 2017, a judicial vacancy was declared for the district court judgeship. Judge Church initially resigned on February 17, 2017, but her resignation was not effective until May 6, 2017.

36. Governor Richard Snyder appointed former Magistrate, Eric Blubaugh, to fill the position of Probate/District Court Judge until the next election.

37. Judge Blubaugh's first day as the Probate/District Court Judge was May 16, 2017.

38. On the afternoon of May 16, 2017, Defendant Judge Blubaugh called Plaintiff in for a meeting. Plaintiff received no prior notice of this meeting and did

not know what the meeting was about.   Tina Ojala was also present for the meeting.

39.    During the meeting, Judge Blubaugh terminated Plaintiff's employment effective immediately.   The only explanation Judge Blubaugh gave Plaintiff for her termination was, "I want to take this Court in a new direction, and I don't think we can do that together." When Plaintiff asked if she had done anything wrong, Judge Blubaugh said, "I don't know enough about your job and what you do to know if you have done anything wrong."   He then repeated that he just wanted to take the Court in a "new direction" and he didn't think they could do that together.

40.    Judge Blubaugh presented Plaintiff with a prepared document to sign and informed her that, "we are giving you the opportunity to resign, or your employment will be terminated effective immediately."

41.    Plaintiff asked if she could talk to someone about it or think about it, and he said no, it was effective immediately.   Plaintiff also asked about what would happen to her benefits and retirement, and Judge Blubaugh said he did not know.

42.    Judge Blubaugh allowed Plaintiff to go to the office of Deputy County Administrator Kelly Church in order to inquire about her benefits and retirement.

43.    When Plaintiff left the room, Ms. Ojala followed her, and they were met by Sheriff Deputy Joe Wiater outside of Ms. Church's office.

8

44. Plaintiff spoke with Ms. Church and learned she would be able to collect her retirement, but not until she turned 55.

45. At that point, Plaintiff had the resignation agreement in her hand, but she had not signed the paper stating she was resigning in lieu of termination. She left Ms. Church's office and then the building, with Ms. Ojala and Deputy Wiater still following. Deputy Wiater apologized to Plaintiff for monitoring her after Judge Blubaugh terminated her employment. Deputy Wiater told Plaintiff he was supposed to "make sure she was ok." He also said, "Frankly, I don't know why I'm here."

46. Plaintiff, Ms. Ojala, and Deputy Wiater walked to entrance of county building. Plaintiff asked Deputy Wiater for a pen, and then she signed the resignation paper. Only after Plaintiff signed the paper did Ms. Ojala and Deputy Wiater stop following her while she collected her personal items from her office and then left the building.

47. Upon information and belief, the Chippewa County judges, including Defendant Blubaugh, were angry that Plaintiff reported the serious misconduct of Judge Church and the illegality of the proposed security plan to SCAO.

### Count I - Violation of Freedom of Speech under the First Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 as to Defendant Blubaugh

48. This Count applies to Defendant Blubaugh in his individual capacity.

9

49.     Plaintiff engaged in protected conduct when she referred the judicial misconduct of Judge Church and posed questions regarding the legality of the proposed courtroom security plan to SCAO.   Plaintiff's official duties did not include supervising Judge's Church's conduct, nor did they include any responsibilities related to planning, supervision, or decision-making regarding courtroom security procedures.   When she spoke on these two important topics, therefore, she was speaking as a citizen on a matter of public concern.

50.     Following her first protected speech in 2015 regarding Judge Church's conduct, she had no official supervisor, due to Judge Church's medical leave and an undeclared judicial vacancy.   She engaged in protected speech for the second time regarding the illegal courtroom security plan on April 4, 2017, also at a time she did not have a supervisor.   On the first day following her protected speech that there was a supervisor in place (May 16, 2017), Defendant Blubaugh terminated Plaintiff's employment.

51.     Plaintiff's termination of employment would clearly deter a person of ordinary firmness from continuing to engage in the conduct of making protected speech.

52.     Defendant Blubaugh terminated Plaintiff's employment at least in part because of Plaintiff's exercise of protected speech by reporting the judicial misconduct and illegality of the courtroom security plan to SCAO.

53. At the time of Plaintiff's termination, the law had clearly established that her comments were constitutionally protected as a matter of public concern and that termination in response to such comments was a violation of her First Amendment rights. Defendant Blubaugh, in his individual capacity, therefore is not entitled to qualified immunity with respect to Count I.

54. Defendant Blubaugh violated the First Amendment when he discharged Plaintiff as aforesaid in retaliation for her protected speech.

55. As a result of Defendant Blubaugh's violation of Plaintiff's First Amendment right to freedom of speech, Defendant Blubaugh is liable to Plaintiff for damages, including lost wages and benefits; future lost wages and benefits and/or reinstatement to her prior or equivalent employment position; compensatory damages for emotional and mental distress; attorney's fees and interest; punitive damages; and all other necessary and appropriate relief.

WHEREFORE, Plaintiff requests that the Court grant her relief in an amount as determined by a jury, plus interest and costs, including reasonable attorney's fees, and order her reinstated to her prior or equivalent employment position, pursuant to 42 U.S.C. § 1988.

### Count II - Violation of Michigan's Whistleblowers' Protection Act as to both Defendants

56. This Count applies to both Defendants, including Defendant Blubaugh in both his individual and official capacities.

57.     Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

58.     Both Defendants are "Employers" within the definition of the WPA. Mich. Comp. Laws Ann. § 15.361.

59.     Plaintiff is an "Employee" within the definition of the WPA.

60.     Plaintiff reported known or suspected violations of the law to SCAO, a public body under the WPA, regarding judicial misconduct of Judge Church and the proposed courtroom security plan.

61.     Defendants subsequently discharged Plaintiff in violation of the WPA.

62.     As a result of Defendants' violation, Defendants are liable to Plaintiff for damages, including lost wages, and benefits; future lost wages and benefits and/or reinstatement to her prior or equivalent employment position; compensatory damages for emotional and mental distress; attorney's fees and interest; punitive damages; and all other necessary and appropriate relief.

WHEREFORE, Plaintiff requests that the Court grant her relief in an amount as determined by a jury, plus interest and costs, including reasonable attorney's fees, and reinstatement to her prior or an equivalent employment position, pursuant to Mich. Comp. Laws Ann. § 15.363.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff Ann Mikolowski

Dated: August 11, 2017     By:   /s/ Sarah R. Howard

>Sarah Riley Howard
Erin Dornbos
Business Address:
146 Monroe Center, N.W., Suite 805
Grand Rapids, MI 49503
(616) 451-8496
showard@psfklaw.com
edornbos@psfklaw.com

13

## JURY DEMAND

To the extent jury trial is allowed with regard to any of the issues as set forth above, Plaintiff demands the same.

                                    PINSKY, SMITH, FAYETTE & KENNEDY, LLP
                                    Attorneys for Plaintiff Ann Mikolowski

Dated: August 11, 2017        By: /s/ Sarah R. Howard
                                    Sarah Riley Howard
                                    Erin Dornbos
                                    Business Address:
                                    146 Monroe Center, N.W., Suite 805
                                    Grand Rapids, MI 49503
                                    (616) 451-8496
                                    showard@psfklaw.com
                                    edornbos@psfklaw.com